CULPEPPER, Judge.
This is a suit for benefits under a homeowner’s insurance policy. Plaintiff, Louis Foster, alleges items of personal property were stolen from his camp house. Defendant, Blue Ridge Insurance Company, denies coverage on the basis of a policy exclusion. The trial court granted judgment for plaintiff. Defendant appeals.
The sole issue on appeal is the correctness of the trial court’s finding that plaintiff was “temporarily residing” at his camp at the time of the loss.
The homeowner’s policy described only plaintiff’s home in Mansura. Plaintiff also owned a camp on Little River in Avoyelles Parish, which was not a described property in the policy.
The policy in question provides in Paragraph C of the General Theft Exclusions as follows:
“This policy does not apply to loss away from described premises of:
“(1) Property not in any dwelling or premises thereof owned, rented or occupied by an insured, except while an insured is temporarily residing therein.”
The parties to the present suit accept as correct, and we agree, that the above quoted exclusion clause was correctly construed in Bryan v. Granite State Insurance Company, 185 So.2d 310 (4th Cir. 1966). In that case, the homeowner’s policy described the insured premises as a home near Lacombe, Louisiana. The insured rented an apartment in New Orleans as a place to spend the night from time to time when they went to the city for social gatherings, visits, etc. The apartment was burglarized, resulting in the loss of jewelry, clothing, etc. Plaintiffs had not visited the apartment for at least four days prior to the burglary. Holding that the loss was not covered under the policy, the court stated:
“The policy exclusion is plain and free from ambiguity. The policy does not cover temporary residences per se and in all events. It covers thefts from premises other than the described premises only “while an insured is temporarily residing therein.” To hold that the policy covers temporary residences per se, as plaintiffs contend, would be to read out the plain and unequivocal language of the policy, and to read into it something that is not there at all.
We shall not attempt to define the phrase “residing in.” Its meaning is plain. A person who maintains a permanent abode in New Orleans may own or lease a “temporary residence” on the Gulf Coast which he occupies during the summer months, but he cannot be said to be “residing therein” at a time when he is not occupying the place but is living in the home in New Orleans. As a matter *DLXXXII of fact a person may have several cottages, camps or other places of residence in addition to the premises described in the policy which he may occupy from time to time, but he cannot “reside in” all of them at the same time.”
In the present case, the camp, a fully furnished three bedroom structure, was used regularly by plaintiff and his sons and nephews for hunting and fishing. He also entertained business clients at the camp. Occasionally, he spent four or five days at a time there. Plaintiff’s work schedule, as an insurance agent, was such that he went to the camp during the week as well as on weekends.
Plaintiff was the only witness at trial who testified as to his use of the camp at the time of the loss. He stated that he had been at the camp for a weekend “plus a few days.” After returning home, he received a call from a Leonard Luneau informing him that an outside butane tank at the camp was missing. He did not investigate the report until that same evening, because he had intended to return to the camp that evening anyway. Upon arriving at the camp, he discovered that the door to the camp had been “busted open” and all of the furniture and furnishings removed. Plaintiff was unable to recall whether he reported the theft that night or the next morning. He was sure, however, that he did make a report on one of those two occasions. He also said that, as best he could recall, it seemed like there might have been two or three days between his call and an actual investigation. The plaintiff stated throughout his testimony that he was unable to be specific about dates.
The defendant disputes the above version of the facts, contending that plaintiff’s trial testimony is inconsistent with information contained in a statement made to defendant’s insurance adjustor on July 27, 1978 and in plaintiff’s deposition, taken on November 29, 1978. Defendant submits these records as evidence that plaintiff had not been at his camp since the weekend before the theft and did not discover the theft until he returned on the weekend following a whole week away from the camp.
In support of this position, the defendant relies on the following language contained in plaintiff’s July 27 report of the loss to defendant:
“. . . There was no one occupying the camp house at the time the theft occurred. I first discovered that my camp had been broken into about 4 or 5 days later when I went back out . .” (Emphasis supplied)
Defendant also points to the following from plaintiff’s deposition:
“Q. Okay. When was the last time you’d been to your camp before the loss. Do you remember?
A. The week — the week-end before that.
Q. And this was on a week-end when you went the first time?
A. Larry, I don’t know—
Q. Was it a week—
A. It was about a week, you know, week before that.”
The briefness of the above statements makes it difficult to consider them conclusive. The issue of plaintiff’s presence at the camp received only slight attention at the deposition, which was primarily concerned with a value estimate of loss. Furthermore, the July adjustor’s report was not actually written down by the plaintiff. The signatures on the report show that the adjustor wrote the statement for plaintiff to sign. There is a possibility that the report does not accurately reflect plaintiff’s words or meaning. The language of the July report is strikingly similar to language used at trial, from which another meaning may be drawn.
At trial, the plaintiff stated:
. . quite often I go out there at least once or twice a week, sleep in over there, go fishing, go hunting from that particular location and every once in a while I would spend three, four or five days at a time out there. On this particular occasion is that I had spent that amount of time out there and then when I went back on the fourth or the fifth day *DLXXXIII I noticed that my tank, . . was gone.” (Emphasis supplied)
In both the July report and at trial, the plaintiff stated that he “went back” to the camp within four or five days. But the more lengthy trial response indicates that the return occurred on the last of four or five consecutive days at the camp and not after an interruption of four or five days elsewhere.
While defendant is correct in arguing that plaintiff’s testimony at trial is frequently confusing, one thing that remains consistent throughout the testimony is the reference to a number of consecutive days residing at the camp, followed by the discovery of the theft. When questioned specifically as to the date of the theft, the plaintiff stated:
“Q. And on the date that you noticed the items stolen, you had been living there for several days prior to that time?
A. Yes, that weekend plus a couple of days.”
On cross-examination, the plaintiff put it this way:
“Q. Louis, do you recall the date of the incident?
A. I really do not.
Q. Okay. Do you recall what day of the week it [the theft] was?
A. If I had to go ahead and guess at it Larry I would say about a Wednesday or a Thursday; I had spent a couple of days out there and it seemed like it had tied in with a week-end and after spending a couple of days after the week-end it happened during that next day.”
******
“A. I spent the week-end there and then, the Saturday, uh the Monday through the following, well, two or three days after that and the next day when I went back over there when I was called and then that’s when I found out that the tank was missing.”
On re-direct, the plaintiff again said:
“Q. You did testify earlier that however for several days prior to the discovery of the loss that you had been living there?
A. Yes we were there for that weekend and a couple of days after that and then that particular day that it happen, I didn’t go but I was prepared to go ahead and go back when I was called and I did go back and check on it and it was missing.”
As part of the argument that the theft was discovered on the weekend, defendant points out that the police report in evidence shows that the theft was reported on March 25, 1978, at 6:10 P.M. This date also appears on the Property Loss Notice and in plaintiff’s own petition as the date of the loss. However, neither party appears to have noticed that the July adjustor’s report contains the statement that the loss occurred on April 25, 1978. The report concludes with the allegation that the police report is in error as to the date. April 25, 1978 was a Tuesday, a fact which, if the report is correct, supports plaintiff’s trial testimony and not defendant’s position. It is quite likely that the police report served as a source of information for both parties and, hence, the same date appears in the Property Loss Notice and plaintiff’s petition.
We conclude the trial judge was not manifestly erroneous nor clearly wrong in his finding of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The inconsistencies cited by the defendant may be reconciled by taking into account the plaintiff’s difficulty in speaking clearly and the greater opportunity at trial for length and detail. The consistency of plaintiff’s trial testimony appears to be a more reliable indication of the facts than the short, prior-to-trial statements, which may well contain significant errors.
The parties do not argue any issues of law in regards to the policy interpretation. They accept the holding of the Bryan case that “temporarily residing therein” is an unambiguous phrase and requires a present *DLXXXIV use or occupancy, including use for sleeping, but not an actual physical presence at the time of a loss. The trial court found that plaintiff was “temporarily residing” at the camp, where he had been present the day before the theft and had intended to return the evening of the theft. This would appear to satisfy the requirements of the Bryan case.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.